# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

_____

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

February 18, 2022

Via ECF

The Honorable Andrew L. Carter, Jr.,
   United States District Court for the
      Southern District of New York,
         40 Foley Square,
           New York, New York 10007.

        Re:   *Nostalgic Partners, LLC, d/b/a the Staten Island Yankees et al.* v.
               *The Office of the Commissioner of Baseball,*
               No. 21-cv-10876 (ALC) (SLC)

Dear Judge Carter:

      I write on behalf of Defendant the Office of the Commissioner of Baseball d/b/a Major League Baseball ("MLB") pursuant to Section 2.A of Your Honor's Individual Practices to request a pre-motion conference regarding MLB's anticipated motion to dismiss the Complaint in the above-referenced action.

      Plaintiffs are four minor league baseball clubs whose affiliations with MLB clubs ended when the contracts governing those affiliations expired in 2020. After the contracts lapsed, MLB reorganized its player development system. As a part of this reorganization, the total number of minor league clubs affiliated with MLB clubs was reduced from 160 to 120. Plaintiffs were not among the clubs invited to affiliate with MLB in the new system.

      Three of the four Plaintiffs have already brought other actions against MLB asserting a variety of claims—including, among others, promissory estoppel, breach of fiduciary duty, and tortious interference—searching for some legal basis to impose liability on MLB for moving on after contracts expired. Now that all of those claims have been dismissed (or stayed pending arbitration), save certain tortious interference claims, Plaintiffs have brought this action trying yet another theory, this time under federal antitrust law. In short, Plaintiffs allege that, in reorganizing their player development system, MLB's 30 member clubs unlawfully agreed, in violation of the Sherman Act, (i) to artificially cap the number of minor league teams affiliated with MLB clubs, and (ii) to "boycott" Plaintiffs and the other clubs that were not included in the new system. (Compl. ¶ 60.)

The Honorable Andrew L. Carter, Jr.                                                                                                    -2-

Based on their assertions in the Complaint and statements in the press, Plaintiffs apparently view this case as a vehicle for challenging a line of decisions by the United States Supreme Court—stretching back to *Federal Baseball Club of Baltimore* v. *National League of Professional Baseball Clubs*, 259 U.S. 200, 208–09 (1922)—recognizing an antitrust exemption for the business of baseball, which has remained settled law for a century and clearly covers the claims in this case. *See Wyckoff* v. *Off. of Comm'r of Baseball*, 705 F. App'x 26, 29 (2d Cir. 2017) (exemption reflected in "binding precedent from the Supreme Court and from this Circuit"), *cert. denied*, 138 S. Ct. 2621 (2018); *see also Miranda* v. *Selig*, 860 F.3d 1237, 1242 (9th Cir.) ("[I]t is undeniably true that minor league baseball . . . falls squarely within baseball's exemption from federal antitrust laws."), *cert. denied*, 138 S. Ct. 507 (2017).  But not only does Plaintiffs' Complaint fail because of this judicially recognized exemption, it also fails because Congress effectively codified an antitrust exemption, through the 1998 Curt Flood Act, for "any . . . matter relating to organized professional baseball's minor leagues."  15 U.S.C. § 26b(b)(2); *see also Miranda*, 860 F.3d at 1242.  This clear expression of Congressional intent as to the specific claims asserted here moots any potential criticism of *Federal Baseball* and its progeny that Plaintiffs may have.

Regardless, the Court need not even reach any antitrust exemption to dismiss this action because, as summarized below, the Complaint has several other fundamental deficiencies.

***Plaintiffs Lack Antitrust Standing.***  "The question of antitrust standing is a threshold inquiry resolved at the pleading stage."  *In re N. Sea Brent Crude Oil Futures Litig.*, 256 F. Supp. 3d 298, 310 (S.D.N.Y. 2017) (Carter, J.) (citation omitted), *aff'd sub nom. Prime Int'l Trading, Ltd.* v. *BP P.L.C.*, 937 F.3d 94 (2d Cir. 2019).  To establish antitrust standing, a plaintiff must allege (a) that it "suffered a special kind of antitrust injury," and (b) that it is "a suitable plaintiff to pursue the alleged antitrust violations and thus is an efficient enforcer of the antitrust laws."  *Gatt Commc'ns, Inc.* v. *PMC Assocs., L.L.C.*, 711 F.3d 68, 76 (2d Cir. 2013) (citation and internal quotation marks omitted).  It is insufficient for the injury to be "causally linked" to the asserted violation.  *Id.* (citing *Brunswick Corp.* v. *Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).  "Rather, in order to establish antitrust injury, the plaintiff must demonstrate that its injury is 'of the type the antitrust laws were intended to prevent and that flows from that which makes or might make defendants' acts unlawful.'"  *Id.* (quoting *Daniel* v. *Am. Bd. of Emergency Med.*, 428 F.3d 408, 438 (2d Cir. 2005)).

Here, Plaintiffs' alleged injury is the lost enterprise value purportedly attributable to the end of their affiliations with MLB clubs.  (*See* Compl. ¶ 118.)  But that is not *antitrust* injury.  If Plaintiffs are correct that the reorganized system from which they have been excluded is anticompetitive (it is not), then so was the old system from which Plaintiffs benefited.  And, as the Second Circuit held in *Gatt*, harm that "flow[s] from . . . participation [in] and then exclusion from" an allegedly anticompetitive system is not the kind of injury that the antitrust laws were designed to remedy.  711 F.3d at 77.

Like the current alleged agreement among MLB clubs supposedly giving rise to Plaintiffs' claims, the Professional Baseball Agreement (the "PBA"), which principally

The Honorable Andrew L. Carter, Jr.                                                                          -3-

governed the prior system, also limited the number of minor league clubs with which MLB clubs could affiliate; the limits were just different. (*See*, *e.g.*, Compl. ¶ 53 & n.5 (acknowledging that the prior system allowed only "up to six" minor league affiliates per MLB club).) Plaintiffs assert that "[t]he Sherman Act requires free-market forces to determine which [minor league] teams will survive and prosper with big league affiliations, and which will not" (*id.* ¶ 2), but that is more an indictment of the old system—which effectively locked in place, for the life of the PBA, the 160 clubs that had existing affiliations—than it is of the reorganized system. Yet Plaintiffs participated in and reaped the benefits of the prior system—the same arrangements that existed in 1998 when Congress recognized an antitrust exemption for anything "relating to organized professional baseball's minor leagues." 15 U.S.C. § 26b(b)(2). Plaintiffs make no attempt to explain why the antitrust laws supposedly condemn the new limits on minor league club affiliations but permitted the old ones. In truth, the only relevant difference is that Plaintiffs were included in one system and not the other, but that does not give them an antitrust claim.

   ***The Complaint Fails To Plead a Plausible Conspiracy To "Boycott" Plaintiffs.*** To plead a conspiratorial agreement among competitors, a plaintiff must allege either "direct evidence" of such an agreement or "circumstantial facts supporting the inference that a conspiracy existed." *Mayor & City Council of Balt.* v. *Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013). Courts consistently refuse to infer a conspiracy from competitors' parallel conduct that "made perfect business sense." *Id.* at 138.

   The Complaint fails to allege any facts supporting an inference that the 30 MLB clubs agreed that none of them would affiliate with Plaintiffs in the new minor league system. To the contrary, Plaintiffs assert that they were denied affiliations in the new system so that "[minor league] teams [that] were already owned by MLB Clubs or otherwise served MLB interests" could receive them. (Compl. ¶¶ 3, 56, 62.) Assuming for the sake of argument that these allegations should be credited, MLB clubs' parallel conduct in exercising their "right to deal, or refuse to deal, with whomever [they] like[]" does not give rise to any inference of a collective agreement to a "group boycott" of Plaintiffs. *Relevent Sports, LLC* v. *Fédération Internationale de Football Ass'n*, 2021 WL 3077550, at *3 (S.D.N.Y. July 20, 2021) (citation omitted). Moreover, under antitrust law, a "group boycott" is an agreement among competitors "to protect themselves from competition from a non-group member who seeks to compete *at the same level*." *Concord Assocs., L.P.* v. *Ent. Props. Tr.*, 2014 WL 1396524, at *11 (S.D.N.Y. Apr. 9, 2014) (emphasis added), *aff'd*, 817 F.3d 46 (2d Cir. 2016). But Plaintiffs do not seek to compete "at the same level" as MLB clubs. To the contrary, the Complaint alleges that MLB clubs compete "*for* affiliations with [minor league] teams," not that minor league clubs want to compete *with* MLB clubs. (Compl. ¶ 81 (emphasis added).)

   ***The Complaint Fails To Plead That Any Alleged Agreement Was Unlawful.*** It is well established that an agreement among competing teams relating to the "[r]egulation of league sports is a textbook example of when the rule of reason applies." *N. Am. Soccer League, LLC* v. *U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 41 (2d Cir. 2018) (citing *Nat'l Collegiate Athletic Ass'n* v. *Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 101

The Honorable Andrew L. Carter, Jr. -4-

(1984)).  To state a claim under the rule of reason, Plaintiffs must plausibly "identify the relevant market affected by the challenged conduct and allege an actual adverse effect on competition in the identified market." *Relevent Sports, LLC*, 2021 WL 3077550, at *5 (citation omitted).

The Complaint falls well short of satisfying this pleading burden.  Plaintiffs' theory of anticompetitive harm to the nebulous "market" for minor league club affiliations is largely incoherent, as illustrated by the Complaint's many contradictory allegations.  For example, to try to shoehorn this case into recognized antitrust doctrine, the Complaint characterizes MLB's new player development system as restricting MLB clubs' "output," but it never explains what the supposed "output" is, and it conversely characterizes minor league clubs as "the supply side" of the supposed "market."  (Compl. ¶¶ 3, 87.)  But even assuming Plaintiffs are contending that minor league club affiliations themselves are tantamount to "output," it would make no economic sense for 30 MLB clubs to collectively "boycott the 40 Ousted Teams" (*id.* ¶ 3), including Plaintiffs; doing so would reduce the demand for affiliations, harming MLB and its clubs.

For these and other reasons, which MLB will explain more fully in briefing its anticipated motion to dismiss, the Complaint fails to state a claim, and MLB respectfully requests that the Court schedule a pre-motion conference so that MLB may proceed with its motion.

Respectfully submitted,

*/s/ John L. Hardiman*

John L. Hardiman