**BERG & ANDROPHY**
A PARTNERSHIP INCLUDING A PROFESSIONAL CORPORATION

HOUSTON    NEW YORK

JAMES W. QUINN
JQUINN@BAFIRM.COM

TEL (646) 766-0073
FAX (646) 219-1977

March 2, 2022

**VIA ECF**

The Honorable Andrew L. Carter, Jr.
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:   *Nostalgic Partners, LLC et al v. Office of the Commissioner of Baseball*,
      Case No. 21-cv-10876 (ALC) (S.D.N.Y.)

Dear Judge Carter:

Plaintiffs are four formerly affiliated minor league baseball teams who are prevented from competing for affiliation because the 30 MLB Clubs collectively agreed to restructure minor league baseball and boycott them. MLB dared to engage in such brazenly anticompetitive conduct only because of the so-called "baseball exemption" based on the Supreme Court's 100-year-old decision in *Federal Baseball Club v. National League*, 259 U.S. 200 (1922).[1] In a decision last Term, the Supreme Court explicitly acknowledged *Federal Baseball's* reasoning – that baseball did not involve interstate commerce – was dubious then and is certainly so today. *NCAA v. Alston*, 141 S. Ct. 2141, 2159 (2021).

Plaintiffs acknowledge that, until the Supreme Court rejects the erroneous "baseball exemption," MLB is likely immune from their claim under Section 1 of the Sherman Act, and that this Court must follow binding Supreme Court precedent. But, in light of *Alston*, Plaintiffs have good reason to believe the Supreme Court will be willing to reconsider *Federal Baseball*. Plaintiffs therefore seek an expeditious appeal and resolution of that central issue, as it is clear that absent the "exemption," MLB's conduct would plainly violate the Sherman Act.

Because MLB is terrified of the possibility of Supreme Court review, it half-heartedly pitches a hodgepodge of non-immunity defenses, hoping one lands so that the Complaint strikes out on any basis other than the exemption. But no fair reading of the Complaint, let alone one in the light most favorable to Plaintiffs, supports any of MLB's other defenses at the pleading stage. The Court should reject those arguments as meritless and allow Plaintiffs to appeal the one real issue in the case.

---

[1] MLB erroneously claims that "Congress effectively codified an antitrust exemption," However, that statute created an antitrust *cause of action*; it did not codify – or even refer to – an antitrust *exemption.* 15 U.S.C. § 26b(b).

BERG & ANDROPHY

Hon. Andrew L. Carter
March 3, 2022
Page 2

*Plaintiffs Have Antitrust Standing*: Only a century of anomalous antitrust immunity could make MLB believe its current restraint of trade cannot be challenged because of its past restraints of trade. If MLB were not boycotting Plaintiffs *today*, then Plaintiffs could compete for affiliations. Compl. ¶¶ 1-5, 58-67 (alleging agreement to exclude 40 minor league teams from competing for MLB affiliations); *id.* ¶ 49 (without agreement, MLB teams are free to "decide to affiliate with MiLB teams").[2] That existing boycott inflicts an antitrust injury because it harms competition and reduces output by artificially restraining affiliations with individual MLB Clubs, which is exactly the type of injury the antitrust laws are intended to prevent. *See IQ Dental Supply, Inc. v. Henry Schein, Inc.,* 924 F.3d 57, 65 (2d Cir. 2019) (reversing dismissal and finding antitrust standing where distributors injured a smaller distributor through direct boycott).

An artificial cap on output set by the agreement between MLB teams – which would otherwise be competing against one another to set up the best minor league structure for its organization – is a classic violation of antitrust law, especially in sports cases decided on full records. *See Alston*, 141 S. Ct. at 2157 (affirming trial verdict finding a violation of the NCAA's cap on student-athlete compensation for use of their names, images and likenesses: "[H]orizontal price fixing and output limitation[s]… are ordinarily condemned as illegal per se.") (quotations omitted)); *In re NFL's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1157 (9th Cir. 2019) (reversing dismissal and concluding that an output restriction on out-of-market NFL games plausibly alleged harm to competition); *see also United States v. Visa*, 344 F.3d 229, 240 (2d Cir. 2003) (affirming trial verdict finding antitrust violation and noting "the most persuasive evidence of harm to competition is the total exclusion of American Express and Discover from a segment of the market for network services"); *Viamedia, Inc. v. Comcast Corp*., 951 F.3d 429, 482 (7th Cir. 2020) ("[C]ompetitors suffer antitrust injury when they are forced from the market by exclusionary conduct").

MLB's reliance on *Gatt Communications, Inc. v. PMC Associates, LLC*, 711 F.3d 68 (2013) is misplaced. That case does not apply because, among other things, the plaintiff was an organizer of the bid-rigging system it challenged when its contract was terminated for convenience, and the plaintiff's lost revenue from this "mere termination" did not flow from a harm to competition. *Id.* at 77. The opposite is alleged here. To be affiliated with MLB, Plaintiffs had to play by MLB's rules under the old system. *See Am. Airlines, Inc. v. Travelport Ltd.*, 2012 WL 3737037, at *8 n.8 (N.D. Tex. Aug. 7, 2012) (denying motion to dismiss: plaintiff "should not be barred from asserting section 1 claims based on its subscriber agreements… simply because [plaintiff] was a party to those agreements," as it "had little choice but to accept the terms"). And Plaintiffs' injuries do not flow from the loss of their prior affiliation with MLB. Plaintiffs are injured because they could compete for affiliation today – if not for the group boycott. MLB's anticompetitive agreement amongst the 30 MLB Teams clearly restricts output,

---

[2] In the past, teams had varying numbers of affiliates based on what each determined was best for itself. For example, the 1947 Brooklyn Dodgers promoted Jackie Robinson from one of its *twenty-four* affiliates. The current group boycott limits each MLB team to just *four* affiliates.

BERG & ANDROPHY

Hon. Andrew L. Carter
March 3, 2022
Page 3

and Plaintiffs' injuries flow directly from that decrease in output.[3]

**The Complaint Pleads a Plausible Conspiracy**: It is black-letter law that there is no heightened pleading standard for antitrust cases. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A complaint need only allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.*

Plaintiffs have alleged the "who, what, where, when and how" – the 30 MLB Clubs collectively took over minor league baseball after the PBA expired in September 2020, most with no notice whatsoever. Compl. ¶¶ 58-60. Plaintiffs have also alleged direct evidence of the challenged agreement, *id.* ¶¶ 1-3, 60, 88, 96-97, 111, not mere "parallel conduct" by the 30 MLB Clubs or circumstantial evidence of conspiracy. MLB thus has more than fair notice of the conspiracy alleged. The Second Circuit has reversed premature dismissals of conspiracy claims that had far less compelling allegations of agreement than here. *See Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 186-89 (2d Cir. 2012); *Starr v. Sony BMG Music Ent.*, 592 F.3d 314, 323-24 (2d Cir. 2010).[4] And, despite MLB's protestations, there is nothing remarkable about a conspiracy claim that involves firms at different levels of distribution. *See, e.g.*, *United States v. Apple, Inc.*, 791 F.3d 290, 297 (2d Cir. 2015) (affirming violation following trial that Apple organized a horizontal conspiracy among competing book publishers to boycott Amazon's e-book distribution model); *Toys "R" Us, Inc. v. FTC.*, 221 F.3d 928, 934-36 (7th Cir. 2000) (affirming violation based on a horizontal conspiracy Toys "R" Us orchestrated among its suppliers to boycott discount retail club stores).

**The Complaint Pleads an Unlawful Agreement**: MLB argues that agreements among sports leagues are subject to the "rule of reason," which requires Plaintiffs to identify the relevant market and an adverse effect on competition. However, MLB's agreement was implemented "for the specific purpose of limiting output," Compl. ¶ 111, which is the type of agreement "ordinarily condemned" as 'illegal per se.'" *Alston*, 141 S. Ct. at 2147.

---

[3] To the extent MLB intends to argue down the road that Plaintiffs lack antitrust standing because they are not efficient enforcers, it is hard to imagine a more appropriate enforcer in this case, as Plaintiffs allege they are being wrongfully excluded from the market. *See, e.g.*, *IQ Dental Supply, Inc. v. Henry Schlein, Inc.,* 924 F.3d 57, 65 (2d Cir. 2019) (reversing dismissal where distributor excluded by direct boycott was "immediate victim" and thus efficient enforcer). And to the extent MLB intends to argue that Plaintiffs' claims are barred because of past participation in the minor league system, *Gatt* makes clear that there is no *in pari delicto* defense in antitrust cases.

[4] MLB's citation to *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129 (2d Cir. 2013), is far afield. In that case, a mass exodus of banks from a failing financial market, without allegations of any agreement, did not give rise to a plausible inference of conspiracy. Equally unavailing is MLB's reference to *Relevent Sports, LLC v. Fed'n Internationale de Football Ass'n*, 2021 WL 3077550 (S.D.N.Y. July 20, 2021), as that case only involved parallel conduct and is on appeal (which MLB failed to note), and the United States of America has intervened as *amicus curiae* because it believes that the district court's decision was erroneous. *Relevent Sports, LLC v. United States Soccer Federation, Inc.,* No. 21-2088 (2d Cir. Oct. 14, 2021), ECF No. 44.

# BERG & ANDROPHY

Hon. Andrew L. Carter
March 3, 2022
Page 4

      Even if the arrangement is not automatically illegal, the Complaint pleads harm to a relevant market in detail. It defines the market as one for affiliate relationships with minor league baseball teams and explains why non-affiliated minor league baseball teams are not interchangeable. Compl. ¶¶ 87-91. The Complaint further alleges that MLB reduced competition in that market by artificially limiting the number of MLB-affiliated teams. *Id.* Although MLB asserts that, under Plaintiffs' definition, boycotting Plaintiffs would "reduce the demand for affiliations, harming MLB and its clubs," MLB has it backwards. By reducing the supply of affiliate relationships, MLB has *increased* the value of such relationships, which is a home run for the MLB owners and their affiliates who now own nearly all of the current MLB-affiliated teams. *Id.* ¶¶ 62-66. As part of this reduction in output, MLB also continued the affiliation of MiLB teams owned by MLB Clubs, regardless of how those teams compared on the merits to the Ousted Teams. *Id.* ¶ 62. Unlucky for Plaintiffs, they were owned by outsiders. *Id.* ¶ 67.

      In any event, MLB's merits-based defense is irrelevant at the pleading stage. Second Circuit law is clear that "market definition is a 'deeply fact-intensive inquiry'" not ordinarily subject to dismissal at the pleadings stage. *U.S. Airways, Inc. v. Sabre Holding Corp.*, 938 F.3d 43, 64 (2d Cir. 2019). The result should be the same here.

      For at least these reasons, MLB's non-immunity defenses are groundless. *See* Fed. R. Civ. P. 1 (the Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). As a result, Plaintiffs respectfully submit that addressing the viability of the baseball exemption now is the only efficient path forward under the circumstances.

Respectfully Submitted,

/s/ *James W. Quinn*

James W. Quinn

Cc:    All Counsel of Record (*via ECF*)